UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED ASSOCIATION OF JOURNEYMAN AND APPRENTICES OF THE PLUMBING AND PIPE FITTING INDUSTRY, UNDERGROUND UTILITY/LANDSCAPE LOCAL UNION NO. 355, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MANIGLIA LANDSCAPE, INC., et al., <br><br> Defendants. | Case No. 17-cv-03037-RS <br><br> **ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## I. INTRODUCTION

This case involves several moving parts. First, there is a dispute between plaintiff United Association of Journeyman and Apprentices of the Plumbing and Pipefitting Industry, Underground Utility/Landscape Local Union No. 355 ("UA Local 355"), and its rival, defendant Northern California District Council of Laborers ("Laborers Union"). UA Local 355 alleges the Laborers Union pressured employers who were signatories to collective bargaining agreements with both unions to hire only Laborers Union members and force UA Local 355 members to join the Laborers Union. Plaintiff Alejandro Trejo, a former member of Laborers Union affiliate Local 270, also alleges in the Sixth Claim for Relief that trustees of the Laborers Union's fringe-benefit trust funds (the "Laborers Trust Funds") breached their fiduciary duties to him. These trustees (the "Laborers Trustees") now seek summary judgment with respect to the Sixth Claim, the only remaining claim levied against them. For the reasons set forth below, this motion is granted.

## II. BACKGROUND

The Sixth Claim alleges the Laborers Trustees breached their fiduciary duties by improperly expending funds on a prior lawsuit against employer Cohen Landscape Service, Inc. and Maniglia Landscape, Inc. ("Cohen/Maniglia"). In 2014, the Laborers Trustees brought a collection action against Cohen/Maniglia to recover benefit contributions allegedly owed to the Laborers Trust Fund under a collective bargaining agreement. That action, which will be referred to as the "2014 Collection Action," settled without any monetary payment by Cohen/Maniglia. Lozano-Batista Decl., Ex. A, ¶ 3. According to Trejo, the 2014 Collection Action was brought to help the Laborers Union expand its jurisdiction rather than for the benefit of Laborers Trust Fund beneficiaries, such as himself.

Trejo was previously a member of Laborers Union affiliate Local Union 270 ("Local 270), which was a party to the Laborers Landscape Agreement. Arguello Decl. ¶ 9 (Mot. Summ. J.). Trejo worked as a Local 270 member during two time periods: from June 2014 to August 2015 and from April 2016 to July 2017. Prior to joining Local 270, Trejo was a member of UA Local 355. *Id.* Ex. G. In January 2017, Trejo worked for Maniglia Landscaping, Inc, which in turn made benefits contributions on Trejo's behalf. Loney Decl. Ex. A. After January, however, Trejo began working exclusively for Martina Landscape, Inc., another employer associated with Local 270. *Id.* Exs. A-B. Martina submitted a final contribution report regarding Trejo in August 2017 for hours worked in July. *Id.* ¶ 18, Ex. B. This was the last contribution report submitted on Trejo's behalf to the Laborers Trust Fund. Trejo's membership in Local 270 was suspended in October 2017 and terminated in August 2018. Arguello ¶¶ 10-12. In July 2017, Trejo returned to UA Local 355. *Id.*

Under the terms of the Laborers Landscape Agreement, there are six benefits trust funds. Loney Decl. ¶ 11, Ex. C. Because of his classification as a "Landscape Tech 2," Trejo only participated in four of these funds during his tenure with Local 270, namely the (1) Health and Welfare Fund, (2) Vacation-Holiday Fund, (3) Training and Retraining Fund, and (4) Contract Administration Fund. *Id.* ¶¶ 5-9, 12-13, Ex. D-E. The Health and Welfare Trust Agreement defines a "participant" as "an employee of an individual employer who has established eligibility

under the Plan." *Id.* Ex. G at 1-2. The term "employee" is defined as a person on whose behalf contributions are made. *Id.* The last contribution submitted on Trejo's behalf to the Health and Welfare Fund was provided by Martina and was submitted on July 2017. *Id.* ¶ 18, Ex. B. On February 1, 2018, Trejo exhausted his Hour Bank balance under the Health and Welfare Fund and was therefore no longer eligible for benefits under the plan. *Id.* ¶ 20.

The Vacation-Holiday Plan defines a plan participant as an employee of a contributing employer "who performs one or more hours of covered work" under one of the Laborers Union's collective bargaining agreements. *Id.* ¶ 21, Ex. H at Art. I § 3. A participant's eligibility depends upon receipt of contributions from the participant's employer. *Id.* Ex. H at Art. II §§ 11-12. Trejo was paid his last two payments as an active plan participant on October 31, 2017 and July 20, 2018. *Id.* ¶¶ 122-23; *id* Exs. I at 8-9, Ex. E. Similarly, the Training and Retraining Trust Agreement provides that only "employees" may participate in the fund and defines the term to mean "any Individual Employer who performs one or more hours of work covered by the Collective Bargaining Agreement." *Id.* Ex. J at Art. I § 4. Funds for this program are used to maintain and operate training and educational programs for employees. *Id.* Ex. J at Art. II § 3.

### III. LEGAL STANDARD

The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The Court must ultimately decide "whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). When making this evaluation, courts draw all reasonable inferences in favor of the non-moving party. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520-21 (1991).

# IV. DISCUSSION

## A. Whether Trejo Qualifies as a Plan Participant Under ERISA

In order to sue a defendant for breach of fiduciary duty under ERISA, a plaintiff must be a "participant" in the plan that gave rise to the fiduciary duty. A "participant" is "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer." 29 U.S.C. § 1002(7). A plaintiff may become eligible if there is "a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117-18 (9th Cir. 1989). In the Ninth Circuit, qualification as a "participant" is a substantive element of an ERISA claim rather than a prerequisite for subject matter jurisdiction. *Vaughn v. Bay Environmental Mgmt., Inc.* 567 F.3d 1021, 1024 (9th Cir. 2009). "Whether a plaintiff is a plan participant is determined as of the time he [or she] files the lawsuit." *Spies v. Life Ins. Co. of N. Am.*, 312 F. Supp. 3d 805, 812 (N.D. Cal. 2018) (quoting *Curtis v. Nevada Bonding Corp.*, 53 F.3d 1023, 1027 (9th Cir. 1995)).

The Laborers Trustees argue that summary judgment is proper because Trejo is no longer a participant in any of the trust funds at issue in this action. As explained above, a plaintiff's status as a participant is determined *at the time of filing*.[1] The Laborers Trustees' own evidence reveals that, as of May 25, 2017 when this action was filed, Trejo was an active participant in three funds: the Training and Retraining Fund, the Health and Welfare Fund, and the Vacation-Holiday Fund. Accordingly, Trejo's present status (or lack thereof) as a plan participant does not provide a basis for granting summary judgment on statutory grounds.

---

[1] The Laborers Trustees argue a plaintiffs' status as a participant should be evaluated when the case is adjudicated on the merits rather than as of the beginning of the lawsuit. The cases they cite, however, do not support this proposition. Rather, these cases simply establish that courts should not attempt to resolve a factual dispute regarding a plaintiff's status as a participant at the motion to dismiss stage. *See Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 979 (9th Cir. 2012) (holding that "because Leeson's participant status relates to the merits of his claim, the district court should have addressed it at the summary judgment stage or at trial" rather than at the motion to dismiss stage); *Norris v. Mazzola*, No. 15-cv-04962-JSC, 2016 U.S. Dist. LEXIS 53399, at *13 (N.D. Cal. Apr. 20, 2016) (same).

**B. Whether Trejo Has Standing to Seek Injunctive Relief** [2]

To establish standing under Article III, a plaintiff must show "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 180-81 (2000). Plaintiffs who seek injunctive relief must also show "a sufficient likelihood that [they] will again be wronged in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).[3] Plaintiffs may not rest upon mere allegations at the summary judgment stage, but must "set forth by affidavit or other evidence specific facts" that support a finding of standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quotation omitted). These facts are presumed to be true at the summary judgment stage but may be challenged at trial. *Id.*

The Laborers Trustees argue that, because Trejo is no longer a participant in the Laborers Trust Funds, he is highly unlikely to suffer any future injury as a result of the Laborers Trustees' conduct. In other words, Trejo will not be harmed in the future by the Laborers Trustees' alleged waste of trust fund assets because he is not entitled to any benefits from those funds. In support of this position, the Laborers Trustees point to various district court cases holding that former plan participants lack standing with respect to such plans. *See, e.g.*, *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. 15-cv-1614-JLS-JCGx, 2017 WL 2655678, at *9 (C.D. Cal. June 15, 2017) (quotation omitted) ("Former Plan participants do not have standing to seek injunctive relief because they are not realistically threatened by Defendants' future breaches of fiduciary duties."); *Barling v. UEBT Retiree Health Plan*, No. 14-cv-04530-VC, 2015 U.S. Dist. LEXIS 100534, *10

---

[2] The question whether Trejo has standing to seek injunctive relief was raised by the Laborers Trustees in their reply. On June 28, 2019, the parties were requested to provide further briefing on this issue.

[3] To the extent Trejo cites *Wells v. Cal. Physicians' Servs.*, No. C 05-01229 CRB, 2007 WL 926490 (N.D. Cal. Mar. 26, 2007), for the proposition that ERISA plaintiffs seeking injunctive relief need to show they are likely to suffer a future injury, this argument is unpersuasive.

(N.D. Cal. July 31, 2015) (granting summary judgment based on lack of standing because the plaintiff was "no longer a participant in the Plan, so the Plan's improper interpretation will not harm him in the future.").

Trejo responds that he faces a significant risk of future injury because it is reasonably likely he will rejoin the Laborers Trust Fund. In the last five years Trejo has switched from UA Local 355 to the Laborers Union, and back again. Trejo Supp. Decl. Br. ¶¶ 3, 5.[4] He switched to the Laborers Union under pressure from his former employer and out of fear that he would lose his job if he refused. *Id.* ¶ 3. Trejo's current employer employs members of both unions. *Id.* ¶ 7. He believes, however, that the Laborers Union is poaching UA Local 355's membership, and that he may have to switch back to the Laborers Union to keep his current job if UA Local 355 is run out of business. *Id.* ¶ 8. If that occurs, Trejo will once again become a participant in the Laborers Trust Funds and will be harmed by the Laborers Trustees' alleged waste of resources.

Trejo further argues that, even if he lacks standing to seek injunctive relief, he has a continuing economic interest in recovering attorneys' fees under ERISA. 29 U.S.C. § 1132(g)(1). *Crotty v. Cook*, 121 F.3d 541, 546 (9th Cir. 1997) (emphasis in original) ("If a plan administrator fails to make the required contributions, a participant *should* receive statutory compensatory damages and attorneys' fees, in addition to his vested benefits."). Accordingly, Trejo argues, he should be allowed to proceed with his claims in order to obtain attorneys' fees for the time spent on this action.

Ultimately, Trejo's evidence does not establish sufficient risk of a future injury to support standing. Trejo's argument that he may be forced to return to the Laborers Union if it succeeds in running UA Local 355, his preferred union, out of business is too speculative. First, the Laborers

---

[4] This declaration was attached along with Trejo's supplemental briefing. The Laborers Trustees objection to the declaration is overruled. Although the June 28, 2019 order requesting further briefing did not expressly authorize the filing of an accompanying declaration, inclusion of the declaration was not improper. Indeed, one of the primary purposes of the Order for Further Briefing was to enable Trejo to respond meaningfully to a standing argument that was not squarely presented in the Laborers Trustees' moving papers. In any event, the relevant facts from Trejo's declaration, discussed above, appear to be corroborated elsewhere in the record.

Trustees would have to succeed in fact in running UA Local 355 out of business. Then, Trejo would have to decide to switch to the Laborers Union. Finally, the Laborers Trustees would have to *continue* breaching their fiduciary duties through the point in time when Trejo rejoins the Laborers Trustees. Given the speculative nature of these events, Trejo does not currently have a sufficient "personal stake" in enforcing the Laborers Trustees compliance with their fiduciary duties. *Lyons*, 461 U.S. at 101.

Trejo's argument that he should be permitted to remain in the action in order to obtain attorneys' fees is similarly unavailing. The attorneys' fees provision upon which Trejo relies states: "In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C § 1132(g)(1). Plaintiffs, however, cite no authority which would permit a plaintiff to proceed to trial on a claim for the sole purpose of obtaining a discretionary award of attorneys' fees. Accordingly, summary judgment is granted in the Laborers Trustees' favor with respect to Trejo's Sixth Claim for Relief.

### V. CONCLUSION

For the reasons set forth above, the motion for partial summary judgment with respect to the Sixth Claim is granted.

**IT IS SO ORDERED**.

Dated: July 22, 2019

RICHARD SEEBORG
United States District Judge

Case No. 17-cv-03037-RS

7